UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 24-cv-1593 |
| ) | |
| COTTER CORPORATION (N.S.L.) and ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY ) | |
| ) | |
| Defendants. ) | |

COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Army Corps of Engineers ("Corps"), files this Complaint and alleges as follows:

NATURE OF THE ACTION

1. This is a civil action brought against Cotter Corporation (N.S.L.) ("Cotter") and Norfolk Southern Railway Company ("Norfolk Southern" and, with Cotter, "Defendants") under Sections 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607 ("CERCLA"), and the Formerly Utilized Sites Remedial Action Program ("FUSRAP"), *see* Energy and Water Development Appropriations Act, 2000, Pub. L. No. 106-60, § 611, 113 Stat. 483, 502.  The United States seeks the recovery of costs it has incurred in responding to the releases or threatened releases of hazardous substances at distinct portions of the North St. Louis County Superfund Sites located in St. Louis and Hazelwood, Missouri ("Site").  The United States also seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), holding Defendants liable for all future response costs that

will be binding in any subsequent action or actions to recover further response costs incurred by the United States at or in connection with the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and over Defendants under 28 U.S.C. §§ 1331 and 1345 and Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this district, and because the Site is located in this district.

## DEFENDANTS

4. Cotter is a corporation incorporated in the State of New Mexico and headquartered in Denver, Colorado.

5. Cotter operated a portion of the Site between approximately 1967 and 1974.

6. Norfolk Southern is a corporation incorporated in the State of Virgina and headquartered in Atlanta, Georgia.

7. Norfolk Southern was formed in 1982 via the consolidation of two rail companies, Norfolk & Western Railway Company and Southern Railway Company. Norfolk Southern is the successor-in-interest to Norfolk & Western Railway Company.

8. Norfolk & Western Railway Company owned a 7.55 acre portion of the Site located at what was then 9200 Latty Avenue and is now 9170 Latty Avenue, in Hazelwood Missouri, from approximately 1945 through September 25, 1980.

9. Norfolk Southern currently owns all or portions of several additional properties within the Site. The Corps has designated these properties as IA-12, EVA Loadout to Frost

Ave., VP-40A (including its subparts other than VP-40A East), Tax Parcel 10L340133, VP-02C, VP-04C, VP-06C, and VP-07C (the "Railroad Properties").

## STATUTORY FRAMEWORK

10. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9601(25), 9604(a).

11. Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), whenever any hazardous substance is released or there is a substantial threat of such a release into the environment, the President is authorized to act, consistent with the National Contingency Plan, to remove or arrange for the removal of, and provide for remedial action relating to any hazardous substance, or to take any other response measure consistent with the National Contingency Plan which the President deems necessary to protect the public health or welfare or the environment.

12. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the owner and operator of a facility, and any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, are liable for all costs of removal or remedial action incurred by the United States not inconsistent with the national contingency plan.

13. In 1974, the Atomic Energy Commission ("AEC") created the FUSRAP program to identify, investigate, and cleanup sites where residual radioactive waste remains as a result of the early years of the United States' atomic energy program. The North St. Louis County Superfund Sites were placed in FUSRAP the same year and added to the National Priorities List in 1989. The AEC was abolished in 1975 and FUSRAP was transferred to the Department of

Energy ("DOE") as the AEC's successor.  In 1998, Congress transferred responsibility for the administration and execution of FUSRAP cleanup from DOE to the Corps pursuant to the Energy and Water Development Appropriations Act, 1998, Pub. L. No. 105-62, 111 Stat. 1320, 1326.  Congress renewed that authority in the Energy and Water Development Appropriations Act, 2000, Pub. L. No. 106-60, § 611, 113 Stat. 483, 502.  The responsibilities of EPA and the Corps with respect to the North St. Louis County Superfund Sites are governed by a Federal Facility Agreement, *In re U.S. Dep't of Energy FUSRAP Sites, St. Louis & Hazelwood, Mo.*, Dkt. No. VII-90-F-0005, entered into pursuant to CERCLA Section 120, 42 U.S.C. § 9620.

## THE SITE

14. The Site consists of 9170 Latty Avenue (sometimes referred to as the Hazelwood Interim Storage Site, or "HISS"), the contiguous 9200 Latty Avenue (sometimes referred to as the Futura Coatings Property, or "Futura" and, with HISS, the "Latty Avenue Properties"), several adjacent properties (known as the "Latty Vicinity Properties") [1], several additional nearby properties (the "Downgradient Properties") [2], and the Railroad Properties.  The HISS and Futura properties comprise approximately 11 acres in a predominantly commercial/industrial area and are the location of a former uranium production residue storage and drying facility that operated there from approximately 1966 through July 1973.

15. The Site is part of the larger North St. Louis County Superfund Sites, a geographically extensive FUSRAP site that includes various locations contaminated with radioactive substances ultimately originating from uranium production activities for the Manhattan Project during World War II.  These activities created uranium production residues

---

[1] The Corps has designated as Latty Vicinity Properties the properties known as 10K530076, VP-01(L), VP-02(L), VP-03(L), VP-04(L), VP-05(L), VP-06(L), and VP-40A East.
[2] The Downgradient Properties include VP-03(C), VP-06(C), VP-07(C), and VP-08(C).

owned by the federal government that, as of the mid-1960s, it sought to transfer to private interests to encourage the growth of the private nuclear energy industry.

16. Contamination within the Site itself originates from storage, processing, and shipment of these uranium production residues by private entities beginning in approximately 1966.

17. In 1966, AEC sold various uranium production residues from these activities at auction for the purpose of reprocessing. Certain residues included in this sale, comprising approximately 8,700 tons of leached barium sulfates, could not economically be reprocessed. Beginning in May 1966, the winning bidder, Continental Mining & Milling Company, transported the uranium residues that were the subject of the contract to the Site under an AEC license allowing them to be stored there. In late 1966, the Commercial Discount Corporation of Chicago, as creditor to the insolvent Continental Mining & Milling Company, took possession of the uranium residues. Under an AEC license issued on June 28, 1967, it began drying and shipping the residues, under Cotter's control and direction, to Cotter's reprocessing facility in Canon City, Colorado.

18. Cotter purchased the residues remaining at the Site in August 1969, and under its own AEC license issued on December 30, 1969, finished drying and shipping to Colorado the majority of the residues by November 1970. By mid-1973, Cotter reported to the AEC that the 8,700 tons of leached barium sulfate were the only residues remaining at the Site.

19. In approximately 1974, Cotter spread the 8,700 tons of leached barium sulfate across the Futura property, mixed it into the top layer of soil, and then excavated the resulting mixture and disposed of it offsite.

20. On May 10, 1974, Cotter applied for termination of its AEC license based in part on its representation that all materials with radioactivity levels meeting or exceeding licensing thresholds had been shipped to its Canon City facility. The AEC terminated Cotter's license on November 13, 1974.

21. After the license termination, the AEC and, later, DOE, became aware of and investigated the continuing presence of hazardous substances, including radioactive substances, at the Site.

22. In 1994, DOE issued a Remedial Investigation ("RI") Report summarizing the results of previous investigations conducted at the North St. Louis County Superfund Sites, including the Site, which concluded that radionuclide contamination was present in the surface and subsurface soils at the North St. Louis County Superfund Sites and identified additional areas for further investigation. DOE and the Corps then continued to investigate and conduct necessary response actions.

23. Between 1998 and 2001, the Corps removed approximately 39,500 cubic yards of contaminated soil from HISS that had been temporarily placed there as a result of response actions in nearby areas.

24. In May 2003, the Corps issued its Remedial Investigation/Feasibility Study ("RI/FS") for the North St. Louis County Superfund Sites. The RI/FS found significant radionuclide contamination at the Site, including Thorium-230 (Th-230), Radium-226 (Ra-226), and Uranium-238 (U-238). The RI/FS estimated that there were approximately 138,000 cubic yards of contaminated surface and subsurface soils at the Site.

25. In September 2005, the Corps issued its Record of Decision (ROD) for the North St. Louis County Superfund Sites. The ROD selected Alternative 5, which called for the

excavation of contaminated soils to levels that allow for unlimited use and unrestricted exposure, except for some limited areas where soils are inaccessible because they are located under permanent structures such as active roads, railways, or buildings where excavation is considered impracticable under current conditions.  In the areas deemed inaccessible, potential risk is managed by implementation of appropriate use restrictions through institutional controls.

26. The Corps has largely completed the selected remedy with respect to the HISS, Futura, and Latty Vicinity Properties.  Potentially significant additional response actions remain to be undertaken at the Downgradient Properties and Railroad Properties, including site characterization and sampling.

27. The Corps has documented at least $88,095,734 in unreimbursed response costs in connection with response actions at the Site, exclusive of direct costs related to removal of the HISS pile, between October 1997 and May 2020.

28. The Corps has incurred and will incur additional response costs at the Site, including for site characterization, sampling, access/institutional control implementation, and other potential response actions at the Downgradient and Railroad Properties as well as potential additional response actions at the remainder of the Site.

## GENERAL ALLEGATIONS

29. Hazardous substances, including radioactive substances, were released at and from the Site as a result of uranium storage, drying, and transport activities there.

30. From approximately 1967 through 1970, Cotter, both acting through the Commercial Discount Corporation and in its own right, conducted uranium residue storage, drying, and transportation activities at the Site.  From 1970 through approximately May 1974, Cotter further conducted uranium residue storage, transport, and disposal activities at the Site.

7

As a result of these activities, hazardous substances, including radioactive substances, contained within the residues were released to soils at the Site.

31. From approximately February 1967 until approximately November 1974, Norfolk & Western Railway Company leased a portion of what was then 9200 Latty Avenue to the Commercial Discount Corporation for the purpose of storing uranium production residues. This portion is known today as 9170 Latty Avenue.

32. From February 1967 until December 1969, Commercial Discount Corporation stored uranium production residues on this property. From December 1969 to approximately May 1974, Cotter stored uranium production residues on this property pursuant to its August 1969 purchase agreement with Commercial Discount Corporation.

33. From February 1967, through approximately May 1974, the uranium production residues stored on Norfolk & Western Railway Company's property were placed on the bare ground, in uncovered, unlined piles. As a result, hazardous substances, including radioactive substances, contained within the residues were released to soils at the Site, at and from Norfolk & Western Railway Company's property.

34. From approximately May 1966 through approximately 2013, when the Corps completed its excavation, removal, and replacement of contaminated accessible soils at 9170 and 9200 Latty Avenue, at various times flooding caused by excessive rain flowed across these properties to the Downgradient Properties. During these flooding events, hazardous substances, including radioactive substances, at the 9170 and 9200 Latty Avenue properties were released, via water-borne transport, at and from those properties to the Downgradient Properties.

35. From approximately February 1967 through approximately June 1973, transport of reprocessed nuclear material from the Site via rail released hazardous substances, including radioactive substances, to the Railroad Properties.

## CLAIM FOR RELIEF

### COUNT I – RESPONSE COSTS

36. Paragraphs 1–35 above, are realleged and incorporated herein by reference.

37. The Site, and each of its component properties, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

38. Defendants are each a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

39. There have been releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of hazardous substances, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at and from the Site.

40. The United States has incurred costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), related to the releases or threatened releases of hazardous substances at and from the Site.

41. The United States' response actions at the Site are not inconsistent with the National Contingency Plan.

42. Cotter is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as a past operator of a facility at the time of disposal of hazardous substances at or from the facility.

43. Norfolk Southern is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as a successor-in-interest to a past owner of a facility at the time of disposal of hazardous substances at or from the facility.

9

44.     Norfolk Southern is also liable with regard to the Railroad Properties portion of the Site under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), as a person who currently owns a facility.

45.     Pursuant to Sections 107(a)(1) and (a)(2) of CERCLA, Defendants are jointly and severally liable to the United States for response costs incurred in connection with the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States respectfully requests that this Court:

a.      Find Defendants jointly and severally liable and order Defendants to reimburse the United States for all costs of the response actions incurred at or in connection with the Site and the Railroad Properties, including interest, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

b.      Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), enter a declaratory judgment on Defendants' joint and several liability that will be binding on any subsequent action or actions to recover further response costs or damages; and

c.      Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date:  12/2/24                         *John Broderick*
Eric D. Albert, Assistant Section Chief (DC Bar #486253)
John R. Broderick, Senior Attorney (MA Bar #688739)
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 514-2850 (direct)

Of Counsel:

Angela Bonstead
Assistant District Counsel
U.S. Army Corps of Engineers
St. Louis District

Christopher D. Carey
Assistant Counsel for Environmental Law
Office of the Chief Counsel
U.S. Army Corps of Engineers

11