UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

UNITED STATES OF AMERICA,

                Plaintiff,

       v.

COTTER CORPORATION (N.S.L.) and

NORFOLK SOUTHERN RAILWAY
COMPANY,

           Defendants.

Civil Action No. 24-cv-1593

**CONSENT DECREE**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 2 |
| II. | JURISDICTION AND VENUE | 3 |
| III. | PARTIES BOUND | 3 |
| IV. | DEFINITIONS | 3 |
| V. | PAYMENTS | 6 |
| VI. | PROPERTY REQUIREMENTS | 7 |
| VII. | STIPULATED PENALTIES | 11 |
| VIII. | DISPUTE RESOLUTION | 12 |
| IX. | COVENANTS BY PLAINTIFF | 14 |
| X. | COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES | 16 |
| XI. | EFFECT OF SETTLEMENT; CONTRIBUTION | 16 |
| XII. | RECORDS | 17 |
| XIII. | NOTICES AND SUBMISSIONS | 19 |
| XIV. | INTEGRATION AND APPENDICES | 20 |
| XV. | MODIFICATIONS TO CONSENT DECREE | 20 |
| XVI. | SIGNATORIES | 20 |
| XVII. | PUBLIC COMMENT AND ENTRY | 20 |

# I.   BACKGROUND

1.      This Consent Decree concerns the North St. Louis County Sites ("Site"), located in St. Louis, Missouri.

2.      There have been releases or threats of releases of hazardous substances, as defined by Section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), at or from the Site.

3.      In response to these releases or threatened releases of hazardous substances, the United States Army Corps of Engineers ("USACE") has, under Section 104 of CERCLA pursuant to the Formerly Utilized Sites Remedial Action Program ("FUSRAP"), performed response actions and has incurred response costs at the Site.

4.      The USACE has incurred a total of $88,095,734 in response costs at the portions of the Site known as the Futura Property, the HISS Property, and the Latty Avenue VPs known as 10K530076, VP-01(L), VP-02(L), VP-03(L), VP-04(L), VP-05(L), VP-06(L), and VP-40A East.

5.      The United States of America ("United States") filed, on behalf of USACE, a complaint in this matter under Section 107 of CERCLA, seeking reimbursement of response costs incurred or to be incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the Site.

6.      The United States alleges that:

a.      The Site is a "facility" as defined by Section 101(9) of CERCLA.

b.      Settling Defendant Cotter Corporation (N.S.L.) operated a portion of the Site at the time hazardous substances were disposed of there.

c.      Settling Defendant Norfolk Southern Railway Company owned a portion of the Site at the time hazardous substances were disposed of there and continues to own portions of the Site.

d.      Settling Defendants are responsible parties under Section 107(a) of CERCLA and are jointly and severally liable for response costs incurred and to be incurred at the Site.

7.      Settling Defendants allege that the United States Department of Energy is among the responsible parties under Section 107(a) of CERCLA and is liable to Settling Defendants for contribution under Section 113(f)(1).

8.      Settling Defendants do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint. Settling Federal Agencies (as defined

2

below) do not admit any liability arising out of the transaction or occurrences alleged in any counterclaim or crossclaim asserted by Settling Defendants.

9.      The United States and Settling Defendants agree, and this Court by entering this Consent Decree finds that: (a) this Decree has been negotiated by the Parties in good faith; (b) settlement of this matter without further litigation and without any admission or further adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties; and (c) this Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED and DECREED:

## II.    JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345, and Sections 107 and 113(b) of CERCLA, and personal jurisdiction over the Parties. Venue lies in this District under Section 113(b) of CERCLA and 28 U.S.C. §§ 1391(b), and 1395(a), because the Site is located in this judicial district. This Court retains jurisdiction over the subject matter of this action and over the Parties for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree, or effectuating or enforcing compliance with this Decree. No Settling Defendant may challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## III.    PARTIES BOUND

11.     This Decree is binding on the United States and upon Settling Defendants and upon their successors. Unless the United States otherwise consents, (a) any change in ownership or corporate or other legal status of any Settling Defendant, including any transfer of assets, or (b) any Transfer of the Site or any portion thereof, does not alter any of Settling Defendants' obligations under this Decree. No Settling Defendant's responsibilities under this Decree can be assigned except under a modification executed in accordance with ¶ 56.

12.     In any action to enforce this Decree, Settling Defendants may not raise as a defense the failure of any officer, director, employee, agent, contractor, subcontractor, or any person representing Settling Defendants to take any action necessary to comply with this Decree. Settling Defendant NSRR shall provide notice of this Decree to each person representing it with respect to the Site and to Settling Defendant NSRR's obligations under this Decree.

## IV.    DEFINITIONS

13.     Terms not otherwise defined in this Decree shall have the meanings assigned in CERCLA or in regulations promulgated under CERCLA. Whenever the terms set forth below are used in this Decree, the following definitions apply:

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"Decree" means this Consent Decree and all appendices attached hereto (listed in Section XIV). If there is a conflict between a provision in Sections II through XVII and a provision in any appendix, the provision in Sections II through XVII controls.

"DOE" means the United States Department of Energy and all of its past and present components or elements, and any successor departments, agencies, or instrumentalities, including with respect to the FUSRAP program.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date upon which the Court's approval of this Decree is recorded on its docket.

"EPA" means the United States Environmental Protection Agency.

"Fund" means the Hazardous Substance Superfund established under Section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507.

"FUSRAP" means the Formerly Utilized Sites Remedial Action Program administered by the United States Department of Energy and the United States Army Corps of Engineers.

"FUSRAP Waste Material" means soil, sediment, surface water, ground water, and structures contaminated as a result of Manhattan Engineer District/Atomic Energy Commission (MED/AEC) uranium ore or residue processing activities by any person or as a result of any subsequent movement of any residues or wastes from such activities to or at the Site or migration of any such contamination to, from, or at the Site, including 1) all wastes, including but not limited to radiologically contaminated wastes, resulting from or associated with uranium manufacturing or processing activities conducted at the St. Louis Downtown Site; and 2) other chemical or non-radiological wastes which have been mixed or commingled with radiologically contaminated wastes resulting from or associated with uranium manufacturing or processing activities conducted at the St. Louis Downtown Site.

"FUSRAP Response Costs" means all costs (including direct, indirect, payroll, contractor, and laboratory costs) that the United States on behalf of the USACE or DOE paid prior to the Effective Date or pays after the Effective Date pursuant to FUSRAP in conducting response actions with respect to FUSRAP Waste Material at or in connection with the Site. FUSRAP Response Costs also include any enforcement costs that the DOJ incurred prior to the Effective Date in efforts to recover such costs incurred by the USACE or DOE in connection with the Site from any person. For purposes of this definition, any action taken with respect to FUSRAP Waste Material pursuant to or in connection with the 1990 Federal Facility Agreement between EPA and DOE (EPA

4

Docket No. VII-90-F-0005) or any amendment thereof is a response action taken pursuant to FUSRAP.

"Group 3 Properties" means the parcels known as IA-12, Eva Loadout to Frost Ave., VP-40A, including its subparts, Tax Parcel 10L340133, VP-02(c), VP-04(c), VP-06(c), and VP-07(c), generally depicted on the maps attached as Appendix B.

"Including" or "including" means "including but not limited to."

"Institutional Controls" means Proprietary Controls (i.e., easements or covenants running with the land that (i) limit land, water, or other resource use, provide access rights, or both and (ii) are created under common law or statutory law by an instrument that is recorded, or for which notice is recorded, in the appropriate land records office) and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to FUSRAP Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure noninterference with, or ensure the protectiveness of the Remedial Action; (c) provide information intended to modify or guide human behavior at or in connection with the Site; or (d) any combination thereof.

"Interest" means interest at the rate specified for interest on investments of the Hazardous Substances Fund established under Section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507, as provided under section 107(a) of CERCLA, compounded annually on October 1 of each year. The applicable rate of interest will be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. As of the date of lodging of this Decree, rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Paragraph" or "¶" means a portion of this Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" means the United States and Settling Defendants.

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992k (also known as the Resource Conservation and Recovery Act).

"Record of Decision" means the USACE decision document that memorializes the selection of the remedial action relating to the Site signed on September 2, 2005, by the Commander, Mississippi Valley Division, USACE, and the Regional Administrator, EPA Region 7, and all attachments thereto, as well as all subsequent amendments and explanations of significant difference.

"Remedial Action" means the remedial action selected in the Record of Decision, and any amendments thereto or explanations of significant difference.

"Section" means a portion of this Decree identified by a Roman numeral.

"Settling Defendants" means Norfolk Southern Railway Company and Cotter Corporation (N.S.L.). As used in this Decree, this definition means all settling defendants, collectively, and each settling defendant, individually.

"Settling Defendant NSRR" means Norfolk Southern Railway Company.

"Settling Defendant Cotter" means Cotter Corporation (N.S.L.).

"Settling Federal Agencies" mean the United States Atomic Energy Commission and any successor agency, including United States Department of Energy and all of its past and present components or elements.

"Site" means the North St. Louis County Sites as described in the December 3, 2021 Non-significant Change to the Record of Decision for the North St. Louis County Sites ("Non-significant Change"), attached as Appendix A, located in St. Louis County, MO, and depicted generally on the map at page 7 of Appendix A, comprised of the St. Louis Airport Site ("SLAPS")/Hazelwood Interim Storage Site ("HISS")/Futura Coating Company Site (CERCLIS ID# MOD980633176, the Latty Avenue Vicinity Properties ("Latty VPs"), the SLAPS Vicinity Properties ("SLAPS VPs"), the Haul Roads included in the SLAPS VPs (i.e., Eva Avenue, Frost Avenue, Hazelwood Avenue, McDonnell Boulevard, and Pershall Road), and all Operable Units defined and set forth in the Non-significant Change.

"State" means the State of Missouri.

"Transfer" means to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including USACE, and the Settling Federal Agencies.

"USACE" means the United States Army Corps of Engineers and any successor departments, agencies, or instrumentalities, including with respect to the FUSRAP program.

## V.    PAYMENTS

14.    **Payment by Settling Defendant NSRR for FUSRAP Response Costs**. Within 30 days after the Effective Date, Settling Defendant NSRR shall pay USACE $22,140,000 in payment of FUSRAP Response Costs (which includes a premium as to future costs), plus Interest on such amount accrued from the date of lodging of this Consent Decree until the date of payment. The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of Missouri shall provide to Settling Defendant NSRR, in accordance with ¶ 53, instructions for making payments, including a Consolidated Debt Collection System ("CDCS") reference number. Settling Defendant NSRR shall make such payment at https://www.pay.gov in

accordance with the FLU's instructions, including references to the CDCS Number. Settling Defendant NSRR shall send notices of the payment to DOJ and USACE in accordance with ¶ 53.

15.    **Payment by Settling Defendant Cotter for FUSRAP Response Costs.**  Within 30 days after the Effective Date, Settling Defendant Cotter shall pay USACE a total of $50,100,000.00 in payment of FUSRAP Response Costs (which includes a premium as to future costs), plus Interest on such amount accrued from the date of lodging of this Consent Decree until the date of payment. The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of Missouri shall provide to Settling Defendant Cotter, in accordance with ¶ 53, instructions for making payments, including a Consolidated Debt Collection System ("CDCS") reference number. Settling Defendant Cotter shall make such payment at https://www.pay.gov in accordance with the FLU's instructions, including references to the CDCS Number. Settling Defendant Cotter shall send notices of the payment to DOJ and USACE in accordance with ¶ 53.

16.    **Payment by Settling Federal Agencies for FUSRAP Response Costs.**

a.    As soon as reasonably practical after the Effective Date, the United States, on behalf of the Settling Federal Agencies, shall pay $91,724,793.60 to USACE in payment of FUSRAP Response Costs (including a premium as to future costs).

b.    **Interest**.  If any payment required by ¶ 16.a is not made within 120 days after the Effective Date, the United States, on behalf of Settling Federal Agencies, shall pay Interest on the unpaid balance, with such Interest commencing on the 121st day after the Effective Date and accruing through the date of payment.

c.    The Settling Federal Agencies' payments under this Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this Decree constitutes a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

17.    **Deposit of Payments**.  All amounts paid pursuant to ¶¶ 14-16 shall be forwarded to USACE and will be credited to the account used to fund response actions at FUSRAP sites, and will be available for response action costs for any FUSRAP site. The point of contact for payment at USACE shall be Mr. Kevin Heath, kevin.j.heath@usace.army.mil, (901) 873-9135.

## VI.    PROPERTY REQUIREMENTS

18.    **Agreements Regarding Access and Noninterference**

a.    As used in this Section, "Affected Property" means any of the Group 3 Properties where USACE determines, at any time, that access; land, water, or other resource use restrictions; Institutional Controls; or any combination thereof, are needed to implement the Remedial Action.  For the avoidance of doubt, as set forth in the Record of Decision, "the current and reasonably anticipated land use for active rail lines is transportation," and use restrictions and/or proprietary controls placed on any Affected Property under this Section VI will be only

those "necessary to prohibit land uses that are inconsistent with the current land use, maintain the physical integrity of the rail bed, and/or manage construction activities to maintain the effectiveness of the remedy," which are generally described on Page 2-86-2-87 of the ROD.

        b.      Settling Defendant NSRR shall cooperate with USACE's efforts to secure from the owner(s), other than the Settling Defendant NSRR, of all Affected Property, an agreement, enforceable by Plaintiff, requiring such owner to provide Plaintiff, and its respective representatives, contractors, and subcontractors with access at all reasonable times to such Affected Property to conduct any activity regarding the Remedial Action or Decree, including the following:

        (1)      implementing the Remedial Action and overseeing compliance with the Decree;

        (2)      conducting investigations of contamination at or near the Site;

        (3)      assessing the need for, planning, or implementing additional response actions pursuant to FUSRAP and with respect to FUSRAP Waste Material at or near the Site;

        (4)      determining whether the Site is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Decree; and

        (5)      implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

        c.      Further, each agreement required under ¶ 18.b shall commit the owner to refrain from using its Affected Property in any manner that USACE determines will pose an unacceptable risk to human health or to the environment as a result of exposure to FUSRAP Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. For avoidance of doubt, and consistent with ¶ 18.a above and the Record of Decision at Page 2-86, use of active rail lines for transportation is "within the CERCLA acceptable risk range" due to the limited opportunity for exposure to FUSRAP Waste Material, and therefore does not pose an unacceptable risk to human health or to the environment.

        19.      **Access and Noninterference by Settling Defendant NSRR**. With respect to Affected Property in which Settling Defendant NSRR has any ownership, proprietary, or beneficial interest, Settling Defendant NSRR shall, to the extent allowed by that interest: (a) provide Plaintiff, and its representatives, contractors, and subcontractors with access at all reasonable times to the Affected Property to conduct any activity regarding the Remedial Action or Decree, including those listed in ¶ 18.b; and (b) refrain from using the Affected Property in any manner that USACE determines will pose an unacceptable risk to human health or to the

environment because of exposure to FUSRAP Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

20.    Settling Defendant NSRR shall cooperate with USACE's efforts to secure and ensure compliance with Institutional Controls selected in the Record of Decision in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices. The United States agrees, consistent with applicable law, to use reasonable efforts to minimize any interference with Settling Defendant NSRR's operations.

21.    **Proprietary Controls**. With respect to Affected Property in which Settling Defendant NSRR has any ownership, proprietary, or beneficial interest, Settling Defendant NSRR shall, to the extent allowed by that interest, execute and record, or cause to be executed and recorded, in accordance with the procedures of this Paragraph, Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Remedial Action or Decree, including those activities listed in paragraph 18.b; and (ii) grant the right to enforce the land, water, or other resource use restrictions described in, and specified pursuant to, the ROD at pages 2-84 through 2-88, or as may otherwise be required by the United States to implement and maintain the Remedial Action.

a.    **Grantees.** The Proprietary Controls must be granted to one or more of the following persons and their representatives, as determined by USACE: the United States, the State of Missouri, Settling Defendant NSRR, and other appropriate grantees. Proprietary Controls in the nature of a Uniform Environmental Covenants Act ("UECA") document granted to persons other than the United States must include a designation that USACE (and/or the State of Missouri as appropriate) is either a "department" or a party expressly granted the right of access and the right to enforce the covenants allowing the United States (and/or the State of Missouri) to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property.

b.    **Initial Title Evidence.** Settling Defendant NSRR shall, not later than 90 days after receipt of notice from USACE that Proprietary Controls will be required for a given Affected Property:

(1)    **Record Title Evidence.** Submit to USACE a title insurance commitment or other title evidence acceptable to USACE that: (i) names the proposed insured or the party in whose favor the title evidence runs, or the party who will hold the real estate interest, or if that party is uncertain, names the United States, the State of Missouri, the Settling Defendant NSRR, or "To Be Determined;" (ii) covers the Affected Property that is to be encumbered; (iii) demonstrates that the person or entity that will execute and record the Proprietary Controls is the owner of such Affected Property or otherwise has authority to execute and record the Proprietary Controls; (iv) identifies all record matters that affect title to the Affected Property, including all prior liens, claims, rights (such as easements), mortgages, and other encumbrances (collectively, "Prior Encumbrances"); and (v) includes complete, legible (to the extent possible) copies of such Prior Encumbrances; and

9

(2)    **Non-Record Title Evidence.** Submit to USACE a report of the results of an investigation, including a physical inspection of the Affected Property, which identifies non-record matters that could affect the title, such as unrecorded leases or encroachments.

c.    **Release or Subordination of Prior Liens, Claims, and Encumbrances.** If any Prior Encumbrance may defeat or adversely affect the rights to be granted by the Proprietary Controls in a manner that could interfere with the Remedial Action or result in unacceptable exposure to FUSRAP Waste Material, Settling Defendant NSRR shall consult with USACE regarding the release, subordination, modification, or relocation of such Prior Encumbrance.

d.    **Update to Title Evidence and Recording of Proprietary Controls.**

(1)    USACE shall provide proposed Proprietary Controls for each Affected Property, to the extent USACE determines such Proprietary Controls are necessary, to Settling Defendant NSRR after completion of other response actions at such Affected Property. Settling Defendant NSRR shall either notify USACE that it agrees with the proposed Proprietary Controls or submit proposed revisions for USACE approval not more than 60 days after receipt. USACE may accept, reject, or, after consultation with NSRR, accept mutually agreeable modifications to the proposed revisions (or, if agreement cannot be reached, reject the proposed revisions).  A decision by USACE to reject Defendant's proposed revisions to proposed Proprietary Controls shall be subject to Dispute Resolution in accordance with Section VIII.

(2)    Settling Defendant NSRR shall, within 30 days of their acceptance of the proposed Proprietary Controls (within the meaning of paragraph (d)(1) above) or of USACE's decision with respect to any proposed revisions to the proposed Proprietary Controls, update the original title insurance commitment (or other evidence of title acceptable to USACE) under ¶ 21.b (Initial Title Evidence). If the updated title examination indicates that no liens, claims, rights, or encumbrances have been recorded since the effective date of the original commitment (or other title evidence), Settling Defendant NSRR shall secure the immediate recordation of the Proprietary Controls in the appropriate land records. Otherwise, Settling Defendant NSRR shall consult with USACE, in accordance with ¶ 21.c regarding any newly-discovered liens, claims, rights, and encumbrances, prior to recording the Proprietary Controls.

(3)    If Settling Defendant NSRR submitted a title insurance commitment under ¶ 21.b(1) (Record Title Evidence), then upon the recording of the Proprietary Controls and instruments addressing Prior Encumbrances, if any, Settling Defendant NSRR shall obtain a title insurance policy that: (i) is consistent with the original title insurance commitment; (ii) is for $100,000 or other amount approved by USACE; (iii) is issued to the

United States, Settling Defendant NSRR, or other person approved by USACE; and (iv) is issued on a current American Land Title Association ("ALTA") form or other form approved by USACE.

(4)     Settling Defendant NSRR shall, within 30 days after recording the Proprietary Controls and instruments addressing Prior Encumbrances, if any, or such other deadline approved by USACE, provide to the United States and to all grantees of the Proprietary Controls: (i) certified copies of the recorded Proprietary Controls and instruments addressing Prior Encumbrances, if any, showing the clerk's recording stamps; and (ii) the title insurance policy(ies) or other approved form of updated title evidence dated as of the date of recording of the Proprietary Controls and instruments.

(5)     Settling Defendant NSRR shall monitor, maintain, and enforce, and, until the issuance of the Site Closeout Report, annually report on all Proprietary Controls required under this Decree.

e.     Settling Defendant NSRR shall not Transfer its interests in Affected Property unless it has executed and recorded all Proprietary Controls and all instruments addressing Prior Encumbrances required by USACE regarding such Affected Property in accordance with this Paragraph.

## VII.   STIPULATED PENALTIES

22.     Settling Defendants are liable to the United States for the following stipulated penalties:

a.     For any failure by a Settling Defendant to pay any amount due under Section V (Payment) by the required date, that Settling Defendant shall pay to USACE, as a stipulated penalty, $2,500 per noncompliance per day that such payment is late for the 1st through 30th days and $10,000 per day thereafter, in addition to Interest accrued from the date payment was due through the date of payment.

b.     For any failure by Settling Defendant NSRR to timely or otherwise comply with any requirement of Section VI (Property Requirements), Settling Defendant NSRR shall pay to USACE, as a stipulated penalty, $250 per day per noncompliance with each requirement for the first thirty days, and $1,000 per day per noncompliance with each requirement thereafter.

23.     **Accrual of Stipulated Penalties.**  Stipulated penalties accrue from the date performance was due, or the day noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance. Nothing in this Decree prevents the simultaneous accrual of separate penalties for separate noncompliances with this Decree. Stipulated penalties accrue regardless of whether a Settling Defendant has been

notified of noncompliance, and regardless of whether a Settling Defendant has initiated dispute resolution under Section VIII, provided, however, that no penalties will accrue as follows:

a.    with respect to a matter that is the subject of dispute resolution under Section VIII, during the period, if any, beginning on the 21st day after the later of the date that USACE's Statement of Position is received or the date that Settling Defendants' reply thereto (if any) is received until the date of the Formal Decision under ¶ 29.b; or

b.    with respect to a matter that is the subject of judicial review by the Court under ¶ 30, during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

24.    **Demand and Payment of Stipulated Penalties.**  USACE may send Settling Defendants a demand for stipulated penalties. The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed. Settling Defendants may initiate dispute resolution under Section VIII within 30 days after receipt of the demand. Settling Defendants shall pay the amount demanded or, if they initiate dispute resolution, the uncontested portion of the amount demanded, within 30 days after receipt of the demand. Settling Defendants shall pay the contested portion of the penalties determined to be owed, if any, within 30 days after the resolution of the dispute. Each payment for: (a) the uncontested penalty demand or uncontested portion, if late; and (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the demand through the date of payment. Settling Defendants shall make payment for Stipulated Penalties at https://www.pay.gov using the link for "United States Army Corps of Engineers Finance Center" including references to the Hazelwood Interim Storage Site (HISS)/Latty Avenue FUSRAP site and DJ #90-11-2-08259/3, and the purpose of the payment. Settling Defendants shall send a notice of this payment to DOJ and USACE, in accordance with ¶ 53. The payment of stipulated penalties and Interest, if any, does not alter any obligation by Settling Defendants under the Decree.

25.    If the United States brings an action to enforce this Decree, the Settling Defendant that is the subject of such enforcement action shall reimburse the United States for all costs of such action, including the costs of attorney time. Payments made under this Section are in addition to any other remedies or sanctions available to the United States by virtue of a Settling Defendant's failure to comply with the requirements of this Decree.

26.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## VIII.  DISPUTE RESOLUTION

27.    Unless otherwise provided in this Decree, Settling Defendants must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. Settling Defendants shall not initiate a dispute challenging the Record of Decision. The United

States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

28.    A dispute will be considered to have arisen when one or more parties sends a written notice of dispute ("Notice of Dispute") in accordance with ¶ 53. Disputes arising under this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed 20 days after the dispute arises, unless the parties to the dispute otherwise agree. If the parties cannot resolve the dispute by informal negotiations, the position advanced by USACE is binding unless Settling Defendants initiate formal dispute resolution under ¶ 29. By agreement of the parties, mediation may be used during this informal negotiation period to assist the parties in reaching a voluntary resolution or narrowing of the mattes in dispute.

29.    **Formal Dispute Resolution**

a.    **Statements of Position.** Settling Defendants may initiate formal dispute resolution by serving on the Plaintiff, within 20 days after the conclusion of informal dispute resolution under ¶ 28, an initial Statement of Position regarding the matter in dispute. The Plaintiff's responsive Statement of Position is due within 20 days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within 10 days after receipt of the response. If appropriate, USACE may extend the deadlines for filing statements of position for up to 45 days and may allow the submission of supplemental statements of position.

b.    **Formal Decision.** The Chief of USACE's Environmental Division will issue a formal decision resolving the dispute ("Formal Decision") based on the statements of position and any replies and supplemental statements of position. The Formal Decision is binding on Settling Defendants unless they timely seek judicial review under ¶ 30.

c.    **Compilation of Administrative Record.** USACE shall compile an administrative record regarding the dispute, which must include all statements of position, replies, supplemental statements of position, and the Formal Decision.

30.    **Judicial Review**

a.    Settling Defendants may obtain judicial review of the Formal Decision by filing, within 20 days after receiving it, a motion with the Court and serving the motion on all Parties. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b.    Review on the Administrative Record. Judicial review of disputes regarding the following issues must be on the administrative record: (i) the adequacy or appropriateness of deliverables required under the Decree; (ii) the adequacy of the performance of the Remedial Action; (iii) whether a reopener condition under ¶ 35 is satisfied, including whether the Remedial Action is not protective of human health and the environment; (iv) any other items requiring USACE approval under the Decree; and (v) any other disputes that the Court determines should be reviewed on the administrative record. For all of these disputes,

Settling Defendants bear the burden of demonstrating that the Formal Decision was arbitrary and capricious or otherwise not in accordance with law.

        c.     Judicial review of any dispute not governed by ¶ 30.b shall be governed by applicable principles of law.

31.    The initiation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any requirement of this Decree, except as USACE agrees, or as determined by the Court. Stipulated penalties with respect to the disputed matter will continue to accrue, but payment is stayed upon the initiation of dispute resolution by Settling Defendants pending resolution of the dispute.

## IX.    COVENANTS BY PLAINTIFF

32.    **Covenants for Settling Defendants**. Subject to ¶¶ 35 and 36, the United States covenants not to sue or to take administrative action against Settling Defendants to recover FUSRAP Response Costs under Section 107(a) of CERCLA.

33.    **Covenants for Settling Federal Agencies**. Subject to ¶¶ 35 and 36, USACE covenants not to take administrative action against Settling Federal Agencies to recover FUSRAP Response Costs under Section 107(a) of CERCLA.

34.    The covenants under ¶¶ 32 and 33: (a) take effect on the Effective Date; (b) are conditioned on the satisfactory performance by Settling Defendants and Settling Federal Agencies of the requirements of this Decree; (c) extend to the successors of each Settling Defendant but only to the extent that the alleged liability of the successor of the Settling Defendant is based solely on its status as a successor of the Settling Defendant; and (d) do not extend to any other person.

35.    **United States' Pre- and Post-certification Reservations**

        a.     Notwithstanding any other provision of this Decree, the United States reserves, and this Decree is without prejudice to, the right to issue an administrative order or to institute proceedings in this action or in a new action seeking to compel Settling Defendants, and USACE reserves the right to issue an administrative order seeking to compel Settling Federal Agencies, to pay the United States for additional FUSRAP Response Costs. The United States may exercise this reservation only if, at any time, conditions at the Site previously unknown to USACE are discovered, or information previously unknown to USACE is received, and USACE determines, based in whole or in part on these previously unknown conditions or information, that the Remedial Action is not protective of human health or the environment. Previously unknown conditions and previously unknown information does not include previously inaccessible areas becoming accessible.

        b.     Before issuance of the Site Closeout Report, the information and the conditions known to USACE include only that information and those conditions contained in or referenced in records related to the Site in the possession of USACE or DOE as of the date of lodging of this Consent Decree.

       c.     After issuance of the Site Closeout Report, the information and the conditions known to USACE include only that information and those conditions known to USACE or DOE as of the date of the Site Closeout Report and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-Record of Decision administrative record, the Site Closeout Report administrative record, or in any information received by USACE in accordance with the requirements of this Decree prior to the Site Closeout Report.

      36.    **General Reservations**. Notwithstanding any other provisions of this Decree, the United States reserves, and this Decree is without prejudice to, all rights against Settling Defendants, and USACE and the federal natural resource trustee(s) reserve, and this Decree is without prejudice to, all rights against Settling Federal Agencies, regarding the following:

       a.     Liability for failure by Settling Defendants or the Settling Federal Agencies to meet a requirement of this Decree;

       b.     liability arising from the past, present, or future disposal, release, or threat of release of FUSRAP Waste Material outside of the Site;

       c.     liability based on the ownership of the Site by Settling Defendants when such ownership commences after Settling Defendants' signature of this Decree;

       d.     liability based on the operation of the Site by Settling Defendants when such operation commences after Settling Defendants' signature of this Decree;

       e.     liability based on Settling Defendants' or Settling Federal Agencies' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of FUSRAP Waste Material at or in connection with the Site, after signature of this Decree by Settling Defendants or on behalf of Settling Federal Agencies;

       f.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

       g.     liability for costs incurred or to be incurred by the United States that are not within the definition of FUSRAP Response Costs; and

       h.     criminal liability.

      37.    Notwithstanding any provision of the Decree, USACE and the United States retain all access authorities and rights, as well as all rights to require land, water, or other

resource use restrictions and Institutional Controls, including related enforcement authorities, under CERCLA, RCRA, and any other applicable statute or regulations.

## X.    COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES

38.    **Covenants by Settling Defendants**

a.    Subject to ¶ 39, Settling Defendants covenant not to sue and shall not assert any claim or cause of action against the United States, or its contractors and employees, regarding FUSRAP Response Costs, including but not limited to, under CERCLA, Section 7002(a) of RCRA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the Atomic Energy Act of 1954, 42 U.S.C. § 2210 et seq., the State Constitution, State law, or at common law.

b.    Subject to ¶ 39, Settling Defendants covenant not to seek reimbursement from the Fund through CERCLA or any other law for FUSRAP Response Costs.

39.    **Settling Defendants' Reservation**. The covenants in ¶ 38 do not apply to any claim or cause of action brought, or order issued, after the Effective Date by the United States to the extent such claim, cause of action, or order is within the scope of a reservation under ¶¶ 36.a through 36.g.

40.    **Covenant by Settling Federal Agencies**.  Settling Federal Agencies shall not seek reimbursement from the Fund through CERCLA or any other law for costs regarding FUSRAP Response Costs.  This covenant does not preclude demand for reimbursement from the Fund of costs incurred by a Settling Federal Agency in the performance of its duties (other than in accordance with this Decree) as lead or support agency under the National Contingency Plan, 40 C.F.R. Part 300.

## XI.    EFFECT OF SETTLEMENT; CONTRIBUTION

41.    The Parties agree and this Court finds that (a) the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA; (b) this Decree constitutes a judicially-approved settlement under which each Settling Defendant and each Settling Federal Agency has, as of the Effective Date, resolved liability to the United States within the meaning of Sections 113(f)(2) and 113(f)(3)(B) of CERCLA; and (c) each Settling Defendant and each Settling Federal Agency is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed," in this Decree. The "matters addressed" in this Decree are all FUSRAP Response Costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person, except for the State; provided, however, that if the United States exercises rights under the reservations in ¶¶ 36.a through 36.g, the

"matters addressed" in this Decree will no longer include those response costs that are within the scope of the exercised reservation.

42.     Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Decree, notify USACE and DOJ in writing no later than 60 days prior to the initiation of such suit or claim. Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Decree, notify USACE and DOJ within 10 days after service of the complaint on such Settling Defendant. In addition, such Settling Defendant shall notify USACE and DOJ within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

43.     **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.

44.     Nothing in this Decree diminishes the right of the United States under Sections 113(f)(2) and (3) of CERCLA to pursue any person not a party to this Decree to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

## XII.   RECORDS

45.     **Settling Defendants' Certification**.  Each Settling Defendant certifies individually that to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any documents or electronically stored information relating to its potential liability under CERCLA regarding the Site since August 29, 2011.

46.     **Settling Federal Agency Acknowledgement**.  The United States acknowledges that each Settling Federal Agency is subject to all applicable federal record retention laws, regulations, and policies.

47.     **Retention of Records and Information**

a.     Settling Defendants shall retain, and instruct their contractors and agents to retain, all documents and electronically stored data ("Records") regarding 1) Settling Defendants' liability under CERCLA regarding the Site and 2) all communications with any other Potentially Responsible Party identified by the United States regarding the Site (i.e., any of the Defendants, the Settling Federal Agencies, or Jarboe Realty & Investment Co., Inc.), until 10 years after the Effective Date ("Record Retention Period").

b.      At the end of the Record Retention Period, Settling Defendants shall notify USACE that it has 90 days to request the Settling Defendants' Records subject to this Section. Settling Defendants shall retain and preserve their Records subject to this Section until 90 days after USACE's receipt of the notice. These record retention requirements apply regardless of any corporate record retention policy.

48.      Settling Defendants shall provide to USACE, upon request, copies of all Records and information required to be retained under this Section. Settling Defendant NSRR shall also make available to USACE, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of its obligations under this Consent Decree.

49.      **Privileged and Protected Claims**

a.      Settling Defendants may assert that all or part of a record requested by the United States ("Requesting Party") is privileged or protected as provided under federal law, in lieu of providing the record, provided Settling Defendants comply with ¶ 49.b, and except as provided in ¶ 49.c.

b.      If Settling Defendants assert a claim of privilege or protection, they shall provide the Requesting Party with the following information regarding such record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a record, Settling Defendants shall provide the record to the Requesting Party in redacted form to mask the privileged or protected portion only. Settling Defendants shall retain all records that they claim to be privileged or protected until the Requesting Party has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendants' favor.

c.      Settling Defendants may not make a claim of privilege or protection regarding: (i) any data regarding the Site, including all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other record that evidences conditions at or around the Site; or (ii) the portion of any record that Settling Defendants are required to create or generate in accordance with this Decree.

50.      **Confidential Business Information (CBI) Claims**. Settling Defendants may claim that all or part of a record provided to the Requesting Party under this Section is CBI to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA and 32 C.F.R. § 286.10. Settling Defendants shall segregate and clearly identify all records or parts thereof submitted under this Decree which they claim is CBI by labeling each page or each electronic filed "claimed as confidential business information" or "claimed as CBI." Records that Settling Defendants identify as CBI will be afforded the protection specified in 32 C.F.R. Part 286. If no claim of CBI accompanies records when they are submitted to USACE, or if USACE has notified the Settling Defendants that the records are not entitled to confidential treatment under

the standards of Section 104(e)(7) of CERCLA or 32 C.F.R. Part 286, the public may be given access to such records without further notice to Settling Defendants.

51.    In any proceeding under this Decree, validated sampling or monitoring data regarding the Site that has been reviewed and approved by USACE, if relevant to the proceeding, is admissible as evidence, without objection.

52.    Notwithstanding any provision of this Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIII.  NOTICES AND SUBMISSIONS

53.    All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified. Whenever a notice is required to be given, or a deliverable is required to be sent, by one Party to another under this Decree, it must be sent as specified below. In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent. Any Party may change the method, person, or address applicable to it by providing notice of such change to all Parties.

| | |
|---|---|
| As to DOJ on behalf of USACE | via email to:<br>Eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-11-2-08259/3 |
| As to DOJ on behalf of Settling Federal Agencies | via email to:<br>MailProcessing_EDS.ENRD@usdoj.gov w<br>Re: DJ# 90-11-6-19167<br><br>with a copy to:<br>Phillip.r.dupre@usdoj.gov |
| As to USACE | via email to:<br>Ms. Nicki Fatherly<br>nicki.fatherly@usace.army.mil |
| As to Settling Defendant NSRR | Norfolk Southern Railway Company<br>650 West Peachtree Street NW<br>Atlanta, Georgia 30308<br>Attention: General Counsel – Environmental<br><br>With a copy to:<br>Kirsten Nathanson<br>Crowell & Moring LLP<br>1001 Pennsylvania Ave. NW<br>Washington, DC 20004<br>knathanson@crowell.com |

As to Settling                      Cotter Corporation (N.S.L.)
Defendant Cotter                    7800 East Dorado Place, Suite 210
                                    Greenwood Village, Colorado 80111
                                    Attention: President

                                    With a copy to:
                                    Steven M. Jawetz
                                    Beveridge & Diamond PC
                                    1900 N Street, NW, Suite 100
                                    Washington, DC 20036
                                    sjawetz@bdlaw.com

## XIV.   INTEGRATION AND APPENDICES

54.    This Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, regarding the subject matter of the Decree.

55.    The following appendices are attached to and incorporated into this Decree:

"Appendix A" is the Non-Significant Change to the Record of Decision for the North St. Louis County Sites (December 3, 2021)

"Appendix B" comprises maps of the Site generally depicting the Group 3 Properties.

## XV.   MODIFICATIONS TO CONSENT DECREE

56.    Non-material modifications to the Decree must be in writing and are effective when signed (including electronically signed) by duly-authorized representatives of the Parties. Material modifications to the Decree must be in writing, signed (including electronically signed) by the Parties, and are effective upon approval by the Court.

## XVI.   SIGNATORIES

57.    Each undersigned representative of the United States and each undersigned representative of a Settling Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this document.

## XVII. PUBLIC COMMENT AND ENTRY

58.    This Decree is subject, after lodging with the Court, to a public comment period of at least 30 days under Section 122(d) of CERCLA and 28 C.F.R. § 50.7. The United States

may modify or withdraw its consent to this Decree if comments received disclose facts or considerations that indicate that this Decree is inappropriate, improper, or inadequate.

59. Settling Defendants agree not to oppose or to appeal the entry of this Decree. If for any reason the Court should decline to approve this Decree in the form presented, this agreement, except for the previous sentence, is voidable at the sole discretion of any Party and its terms may not be used as evidence in any litigation among the Parties.

60. Upon entry of this Decree by the Court, this Decree constitutes a final judgment under Fed. R. Civ. P. 54 and 58 among the Parties.

So ORDERED this 23rd day of January , 20 25 .

_____
United States District Judge

21

Signature Page for Consent Decree Regarding North St. Louis County FUSRAP Site

FOR THE UNITED STATES:

TODD S. KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

_John Broderick_
Eric D. Albert, Assistant Section Chief  (DC Bar # 486253)
John Broderick, Senior Attorney (MA Bar # 688739)
U.S. Department of Justice
Environment and Natural Resources Division Environmental
Enforcement Section

_Phillip R. Dupre_
Phillip R. Dupre, Senior Attorney (TX Bar # 24069650)
U.S. Department of Justice
Environment and Natural Resources Division Environmental
Defense Section

Signature Page for Consent Decree Regarding North St. Louis County FUSRAP Site

**FOR Norfolk Southern Railway Company**

9/27/24
Date

[name] Jason M. Morris
[Title] SVP, L&D and Corporate Secretary
[Address] 650 West Peach tree St. NW
Atlanta GA 30308

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, this Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service. This Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

| | |
|---|---|
| Name: | Kirsten Nathanson |
| Title: | Partner |
| Company: | Crowell & Moring LLP |
| Address: | 1001 Pennsylvania Ave. NW |
| | Washington, D.C. 20004 |
| Phone: | (202) 624-2500 |
| Email: | knathanson@crowell.com |

23

Signature Page for Consent Decree Regarding North St. Louis County FUSRAP Site

**FOR Cotter Corporation (N.S.L.)**

_9-19-24_
Date

[name]   Arlene F. Jurgeitis
[Title]   President
[Address]   7800 East Dorado Place, Suite 210
Greenwood Village, Colorado 80111

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, this Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service. This Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

| | |
|---|---|
| Name: | Allyn L. Stern |
| Title: | Principal |
| Company: | Beveridge & Diamond PC |
| Address: | 600 University Street #1601 |
| | Seattle, WA 98101 |
| Phone: | 206.620.3027 |
| Email: | astern@bdlaw.com |

24

# Exhibit A



**DEPARTMENT OF THE ARMY**
U.S. ARMY CORPS OF ENGINEERS, ST. LOUIS DISTRICT
114 James S. McDonnell Boulevard
Hazelwood, MO 63042-3102

REPLY TO
ATTENTION OF:

Formerly Utilized Sites Remedial Action Program (FUSRAP)

CEMVS-PM-R                                                    3 December 2021

MEMORANDUM FOR RECORD

SUBJECT: Non-significant change to the Record of Decision for the North St. Louis County Sites

1. References:

   (a) Environmental Protection Agency (EPA), 1999. A Guide to Preparing Superfund Proposed Plans, Records of Decision, and Other Remedy Selection Documents, Office of Solid Waste and Emergency Response, OSWER 9200.1-23P, EPA 540-R-98-031, July.

   (b) EPA, 2000. A Guide to Developing and Documenting Cost Estimates During the Feasibility Study, OSWER 9355.0-75, July.

   (c) USACE, 2005. Record of Decision for the North St. Louis County Sites, St. Louis, Missouri, Final, September.

2. The U.S. Army Corps of Engineers (USACE) is issuing this memorandum to document a non-significant change to the final remedy presented in the Record of Decision for the North St. Louis County Sites (USACE, 2005) (ROD). This non-significant change (NSC) is prepared by the U.S. Army Corps of Engineers (USACE) as lead agency to document minor changes to the scope, performance, and cost of cleanup actions adopted in a remedy-selection document (EPA, 1999). This memorandum will be included in the post-decision document file for the North St. Louis County Sites.

STATEMENT OF BASIS

3. Following the approval and acceptance of a ROD, circumstances can arise that may warrant a change to certain limited aspects of the selected remedy. The EPA defines three categories of post-ROD change: (1) non-significant (or minor) changes, (2) significant changes, and (3) fundamental changes. Direction on what constitutes each type of change is provided in the EPA guidance document *A Guide to Preparing Superfund Proposed Plans, Records of Decision, and Other Remedy Selection Decision Documents (EPA, 1999)*. Based on this guidance, non-significant changes are those that "will not have a significant impact on the scope, performance or cost of the remedy".

1

4.  This memorandum describes such a non-significant change.  There is no change in scope, performance or cost because the expected remediation results and goals are identical to those specified in the ROD.  In fact, the necessity for this memorandum is merely due to splitting up the one Operable Unit (OU) addressed in the ROD to six (6) Operable Units. Through the execution of the remedial action (RA) in North St. Louis County, it has been realized that having separate OUs would be beneficial to the program.

Currently, the North County Site is split up into 3 separate sites with a separate funding source for each site: St. Louis Airport Site (SLAPS); St. Louis Airport Site Vicinity Properties (SLAPS VPs); and Latty Avenue Properties.

Through the execution of the remedial action (RA) in North St. Louis County, it has been realized that having separate OUs would be benefit the program by:

  a) Grouping properties based on general location, similarity in route of contamination and type of property (e.g., Road, mainline railroad, etc.);

  b) Designing and managing future excavation activities based on similar property types and access requirements;

  c) Focusing efforts on remediation and closeout of remaining properties versus stewardship of released properties;

  d) Simplifying management of properties requiring institutional controls;

  e) Facilitating and expediting closeout of RA for a single OU; and

  f) Allowing transfer of an OU to the Department of Energy for long-term management responsibilities at an earlier date.

5.  The North St. Louis County Site is part of the St. Louis Formerly Utilized Sites Remedial Action Program (FUSRAP) which is comprised of multiple properties located in two distinct areas: the North St. Louis County Site and the St. Louis Downtown Site (SLDS).

The North St. Louis County Site:
• is located in northern St. Louis County near the Lambert-St. Louis International Airport.
• includes three properties on the U.S. Environmental Protection Agency's (EPA's) National Priorities List (NPL): SLAPS, HISS, and Futura Coatings.
• consists of industrial, commercial, residential, and recreational properties; a portion of the airport;  transportation corridors such as roads and railroads; and Coldwater Creek.


SLAPS is a 21.7-acre property in St. Louis County immediately north of the Lambert-St. Louis International Airport.  It is bounded by the Norfolk and Western Railroad and Banshee Road on the south, Coldwater Creek on the west, and McDonnell Boulevard and adjacent recreational fields on the north and east. A heavily industrialized area that includes landowners/tenants such as Lambert-St. Louis International Airport, the Boeing Company, and GKN Aerospace Services surrounds the SLAPS property.

## North County Properties

| LOCATION NAME | PROPERTIES |
|---|---|
| SLAPS | Investigation Areas 1 through 7 |
| SLAPS VPs | Investigation Areas 8 through 13; Haul Roads –Eva Avenue, Frost Avenue, Hazelwood Avenue, McDonnell Boulevard, and Pershall Road; Haul Road Properties –Vicinity Properties 1-63 including un-named vicinity properties and all properties listed as un-impacted properties within the North St. Louis County FUSRAP boundaries; VP-40A (formerly a Latty Avenue Property) Coldwater Creek; Coldwater Creek Vicinity Properties 1C through 10C and Properties adjacent to Coldwater Creek within the 10-year flood plain from Pershall Road to the Missouri River |
| Latty Avenue Properties | Hazelwood Interim Storage Site (HISS) Futura Coatings Company (Futura) Latty Avenue Vicinity Properties 1L through 6L and 10K530087, 10K530065; 10K530076 |

The SLAPS VPs consist of approximately 144 properties including properties along former haul routes between the SLAPS and the HISS, Coldwater Creek, the open fields (former ballfield area) immediately north of the SLAPS, and other SLAPS contiguous properties including properties considered non-impacted.  The impacted properties are located along haul routes between the SLAPS and the HISS.  These routes include Eva Avenue, Frost Avenue, Hazelwood Avenue, McDonnell Boulevard, and Pershall Road. The SLAPS VPs are primarily located within the City of Berkeley; however, Pershall Road, the north side of McDonnell Boulevard, and a portion of Hazelwood Avenue are within the City of Hazelwood. Coldwater Creek flows for 500 feet (ft) [153 meters (m)] along the western border of the SLAPS.  The creek originates 3.6 miles (mi) [5.8 kilometers (km)] to the south of the SLAPS and continues for 15 mi (24 km) in a northeasterly direction through the City of Hazelwood, the City of Florissant, unincorporated areas of St. Louis County, and along the northern edge of the community of Black Jack, until it discharges into the Missouri River.  Properties adjacent to the Coldwater Creek within the 10-year flood plain are also SLAPS VPs but referred to as Coldwater Creek (CWC) properties because of their proximity to Coldwater Creek.

The Latty Avenue Properties are approximately 1 mile north of SLAPS in the Berkeley Industrial Court immediately east of Coldwater Creek.  The Latty Properties consists of the Hazelwood Interim Storage Site (HISS)/Futura Coatings (Futura) and ten (10) Latty Vicinity Properties (VPs 1L/10K530087 – 6L; 10K530065; 10K530076; and VP-40A (railroad corridor adjacent to Futura). These properties are surrounded by commercial, light industrial and transportation facilities.

SUGGESTED REMEDY AT THE NORTH ST. LOUIS COUNTY SITES

6.  The Selected Remedy for the North County Sites is *Excavation with Institutional Controls for Soils Under Roads, Rail Lines, and Other Permanent Structures*. The Remedy requires the remediation of soil, sediment, and soil adhered to structures for radiological contaminants-of-concern (COCs) to meet remediation goals (RGs) and will also address co-located non-radiological COCs. The selected remedy satisfies the threshold requirements of CERCLA 121 to be protective of human health and the environment through removal of contaminated soil and sediment and use of institutional controls to prevent exposure to humans or the environment; complies with Applicable or Relevant and Appropriate Requirements (ARARs); is cost-effective; and utilizes permanent solutions to the extent practicable.

The main components of the Selected Remedy include:
- Excavate all accessible contaminated soils to RGs that support unlimited use and unrestricted exposure (UUUE) and dispose off-site at a permitted facility;
- Impose use restrictions at areas under roads, active rail lines and other permanent structures where the residual condition is not consistent with UUUE;
- Dredge contaminated sediments from Coldwater Creek to RGs that support UUUE;
- Remove contaminated soils from the surfaces of buildings and structures as necessary to achieve RGs that support UUUE, or remove the contaminated structures themselves and dispose off-site at a permitted facility;
- Monitor ground water and surface water during the soil remediation period to ensure water quality is not adversely effected and identify any areas where ground water may be significantly degraded; and,
- Monitor ground water long-term in selected areas where soils contaminated above RGs are left in place or where contaminated ground water has the potential to degrade adjacent ground-water or surface-water systems.

7.  In 1974, AEC [later to become the Department of Energy (DOE) and the U.S. Nuclear Regulatory Commission (NRC)] established the FUSRAP to address sites contaminated as a result of the nation's early atomic weapons development program. The St. Louis Downtown Site (SLDS), SLAPS, SLAPS VPs, and the Latty Avenue Properties were placed in FUSRAP.  Further, SLAPS, HISS, and the Futura Coatings Company property were added to the Environmental Protection Agency's (EPA) National Priority List (NPL) in 1989. A Federal Facility Agreement (FFA) was negotiated between EPA and the Department of Energy (DOE) under CERCLA Section 120. The FFA incorporates the procedural and documentation requirements of CERCLA and establishes the roles of each signatory agency.   The Federal Facility Agreement (Docket Number VII-90-F-0005) addresses cleanup of the following types of materials:

- all wastes, including but not limited to radiologically-contaminated wastes resulting from or associated with uranium manufacturing or processing activities conducted at the St. Louis Downtown Site; and,

- other chemical or non-radiological wastes that have been mixed or commingled with radiologically-contaminated wastes resulting from or associated with uranium manufacturing or processing activities conducted at the St. Louis Downtown Site.

8. The ROD also explains that "Under CERCLA, remedial actions are managed as a single or multiple operable units (OU). OUs are discrete actions that comprise an incremental step toward comprehensively addressing the site problems. OUs may address geographical portions of a site, specific site problems, initial phases of an action, or may consist of any set of actions performed over time or any actions that are concurrent but located in different parts of a site."  The ROD established the North St. Louis County Sites as a single OU.

NON-SIGNIFICANT CHANGES

9.  Scope, Performance and Cost Change: There is no change in scope, performance or cost to the North County ROD.  The expected remediation results and goals are identical to those specified in the ROD.  This NSC addresses the formation of six (6) Operable Units (OUs) for the North St. Louis County Sites from one (1) OU that is described in the ROD. The 6 OUs are created based on similarity in route of contamination and type of property. Through the execution of the remedial action (RA) in North St. Louis County, it has been realized that having separate OUs would be beneficial to the program.

10.  This memorandum will be included in the post-decision document file to provide a record of these non-significant changes to the final remedy for North St. Louis County ROD.

MOSER.PHILLIP.
LEE.1244134706

Digitally signed by
MOSER.PHILLIP.LEE.1244134706
Date: 2021.12.14 14:38:49 -06'00'

Phil Moser, PMP
Program Manager
Chief, FUSRAP & Environmental Branch
U.S. Army Corps of Engineers, St. Louis District

Encls:
1.   Table 1. North St. Louis County Operable Units
2.   Figure 1. North St. Louis County ROD Boundary

**Table 1. North St. Louis County Operable Units**

| Operable Unit Number | Operable Unit Name | Scope of Operable Unit |
|---|---|---|
| **OU-1** | SLAPS | IAs 1 through 7 |
| **OU-2** | SLAPS VPs | IAs 8 through 13; Includes the 78 VPs named in the Feasibility Study for the St. Louis North County Site (USACE, 2003) (NC FS/ ROD as impacted; VPs 1C-10C; and un-impacted properties/areas not numbered or named in the NC FS/ ROD (and adding Nyflot and Heather Lane properties) |
| **OU-3** | Latty Avenue Properties | HISS and Futura; VPs 1L - 6L and Parcels 10K530087; 10K530065; 10K530076 (88 acres) |
| **OU-4** | SLAPS VPS - Roads | Eva Ave, Frost Ave, Hazelwood Ave., Pershall Road, Byassee Dr, Banshee Rd, Ford Ln, Seeger Ind. Dr, Latty Ave., Heather Lane and Nyflot. Also included are portions of I-170, I-270, Lindbergh Blvd., Dunn Road and Hanley Road. |
| **OU-5** | SLAPS VPs – Mainline Railroads | Mainline railroads within the ROD boundary. Rail lines and spurs within vicinity properties will be included with the property and not be included in OU-5. |
| **OU-6** | SLAPS VPs - Coldwater Creek Corridor and Floodplain North of Dunn Road to the Missouri River | The ROD includes the Coldwater Creek corridor (top of bank to top of bank) to the Missouri River. This OU will include the 10-year floodplain properties (approximately 700). |



Path: U:\GPS\NorthCo\North County ROD Revisions\ESD\Figure 1 Original NC ROD Boundary.mxd

Figure 1. North St. Louis County ROD Boundary

**APPENDIX B**

**GROUP 3 PROPERTIES**

| | |
|---|---|
| Figure 1 | Group 3 Properties |
| Figure 2 | Investigation Area (IA) - 12 |
| Figure 3 | Eva Loadout |
| Figure 4 | Vicinity Property (VP) - 40A |
| Figure 5 | Parcel 10L340133 |
| Figure 6 | VP-02(c) |
| Figure 7 | VP-04(c) |
| Figure 8 | VP-06(c) |
| Figure 9 | VP-07(c) |



Path: C:\GPS\NorthCo\North County Status\2024\DOJ\Projects\Figure 1 Group 3 ProDate: 6/13/2024d

Figure 1. Group 3 Properties



LEGEND:

- Group 3 Property
- Railroad
- ROD Boundary
- Road
- Vicinity Property
- Coldwater Creek

MO-East State Plane
(NAD-83, Feet)

0    250    500 Feet

North County St. Louis Sites
St. Louis, Missouri

| DRAWN BY: Leidos | REV: 0 | DATE: 6/13/2024 |

Figure 2. IA-12



Path: C:\GPS\NorthCo\North County_Status\2024\DOJ\Projects\Figure 3 Eva LoadouDate: 6/13/2024

Figure 3. Eva Loadout



Figure 4. VP-40A



Figure 5. Parcel 10L340133



Figure 6. VP-02(c)



Figure 7.  VP-04(c)



Figure 8. VP-06(c)



Figure 9.VP-07(c)